By the Court
Freedman, J.
The plaintiff was a seaman on board the bark Vilora H. Hopkins, and he brought this action against the defendant, as part owner of the vessel, for damages claimed to have been sustained by him in consequence of alleged negligent treatment by the master of the vessel, while suffering from injuries received in the service of the vessel.
About July 1, 1881, in the Indian Ocean, a cross sea boarded the vessel and seriously injured the plaintiff. Both of his shoulders were dislocated, his left wrist was broken, and his left hand badly bruised. The captain, although the vessel was in jeopardy, promptly attended to the plaintiff. He was successful in re-placing the right shoulder with comparatively little difficulty. But the wrist of the left arm being broken, force could not be applied to that arm. It was necessary first to set and bandage the broken wrist, and this the captain did. He extended the fingers of the hand, so as to bring the bones into position, and then bound up the hand and arm with splints. For the purpose of setting the left shoulder, he resorted to a very novel and ingenious expedient. He took one of the cabin doors off its hinges and nailed a board across the doorway a little higher than the plaintiffs’ arm-pit. Then by extending the arm over this bar *153 and pulling upon it, the shoulder was sprung back into place.
From these injuries to his shoulders the plaintiff in due course of time entirely recovered, and no complaint was ever made, or is now made, concerning their treatment.
The grievance of the plaintiff relates solely to the treatment of the wrist and hand.
Upon this point we have heretofore held (50 Super. Ct. 46), that, under the law merchant, the plaintiff had the right to claim from the ship suitable care and treatment, and that, if he was negligently treated by the master, the defendant cannot defeat the action by showing that he was part owner only, and that the other owners were not made parties defendants in the action. The propositions thus decided are not open for re-examination. As to the further point that the captain sailed the vessel on what is known as shares, it was held in Scarff v. Metcalf (22 Week. Dig. 63), that, as this does not involve an entirely independent command, it constitutes no defense to the owner. The learned judge who presided at the trial was therefore right in refusing to dismiss the complaint.
An examination of the whole case shows, however, that upon the question of negligence the verdict rendered by the jury is against the weight of the evidence, even if the case was properly submitted.
The vessel, mider the statutes of the United States, was bound to have on board a chest of medicines, and this the evidence shows she had. But there is no law which required the presence of a physician or surgeon. Suitable directions contained in the medicine chest for administering the remedies were sufficient. In the absence of a physician or surgeon it was the duty of the captain to act according to his best judgment, and if he was not fully competent to follow the directions contained in the medicine chest, he was to extend such relief as under all the circumstances was reasonable until regular *154 medical advice could be procured with reasonable dispatch.
At the time of the injury the vessel was, as already stated, in the Indian Ocean. The nearest port at that time, as claimed by the plaintiff, was on the island of Mauritius ; but as that was some 1500 miles from the. scene of the accident, and entirely out of the regular course of the vessel, the captain had the right to keep on his voyage to Batavia, as he did do. In going there, it is true, he passed Angers, but as that is simply a port for orders and without a hospital, and distant only about sixty miles from Batavia, and he had no orders to stop there, and there being not sufficient evidence that any good could have been done, even if he had stopped there and looked for a physician, he had a right to pass it.
The result is that, in every aspect of the case, the duty of the captain to furnish to the plaintiff regular medica assistance cannot be held to have commenced before the arrival of the vessel at Batavia.
Reserving for the present the occurrences on the voyage to Batavia for examination to be made hereafter, it is to be noted that the vessel arriyed at Batavia on a Saturday afternoon at a time too late to comply with quarantine and custom-house regulations. On the following Monday, which was the earliest time practicable, the necessary formalities were gone through with, and the véssel was allowed to enter. The captain then applied to the United States consul to put the plaintiff into hospital, and for that purpose made a full statement of the particulars of plaintiff’s case. The consul was willing to give a permit, if insisted on, but advised, as a preferable course, that the plaintiff should be taken to the doctor of the guardship, who was quite a competent man. That advice was acquiesced in by both the captain and the plaintiff. Owing to the prevalence of a sea breeze it was unsafe to proceed to the guardship on that same evening, but the plaintiff was taken on board the following morning. At that time the captain took him there in his own boat. *155 The doctor examined plaintiff’s hand and wrist thoroughly, and, after having acquainted himself with all needful particulars, dressed it and gave instructions for the future. Plaintiff’s hand at that time was much inflamed, and, Contraction of the, cords having set in, the opinion of the doctor was that there was a probability that the hand would become crippled. After that the plaintiff was repeatedly taken before the said doctor. The vessel remained at Batavia about thirty-five or thirty-six days, and during that time he was taken to the said doctor at least five times according to his own testimony, and twenty-one times according to the testimony of the captain. But the number of visits is not very material, for the evidence fully establishes that all that could then and there be done for the plaintiff was done, that all the instructions of the doctor were faithfully carried out, and that upon the last visit the doctor said that the hand was healing rapidly, and that he was not able.to do any more than he had done.
The vessel then proceeded to Sourabaya, where she remained from two to three weeks, and during that time the plaintiff according to his own testimony did not ask to see any doctor.
The next port at which the vessel touched, was Peckalonga. She arrived there some two days after having left Sourabaya. Her stay at Peckalonga amounted to about sixty days. There was no hospital at that port, but a physician resided there. As the plaintiff requested to see a doctor, the captain took him to a hotel and sent for the resident physician. The latter came, examined the hand, and came to the conclusion which he announced, that he could do no more than had been done. The plaintiff returned to the vessel again, and soon thereafter the vessel, with the plaintiff on board, sailed for Boston, Mass., her port of final destination, where she arrived February 1, 1882. ■ At Boston the plaintiff was discharged with a permit to go to the Chelsea hospital, of which, however, he made no use.
*156 For the period of time so far examined, viz.: from the arrival of the vessel at Batavia to the discharge of the plaintiff at Boston, the case is utterly bare of facts upon which a charge of negligence causing the injury complained of, can be sustained.
Outside of the matters so far considered, the only pretense of wrongful treatment by the captain during the period examined, is that the plaintiff was compelled to work at Peckalonga, although he was not able to do so. This was seventy-five or eighty days after the accident, when the fracture had been healed and a bony union re-established, though more or less inflammation may have remained in the hand from causes to be hereinafter referred to. The clear weight of the evidence is, that the plaintiff was simply requested to turn a winch with four or five other seamen, a work in which he could use one or both of his hands at pleasure, and that he complied with the request without objection and with the statement that he would try. So, in all other respects the evidence clearly shows that the plaintiff was not, at any time after the accident, required to do any substantial service involving the use of the hand and wrist in question.
The case of the plaintiff, therefore, wholly rests upon what took place on board of the vessel from the time óf the accident to the time of the arrival of the vessel at Batavia.
As to that the plaintiff complains of many things which, even if true, would establish only that he might have been made more comfortable than he was made. None of these things co-operated to produce the crippled condition of the hand for which he seeks compensation in damages. Moreover, the testimony of the captain, the mate, the steward, and the stewardess, clearly demonstrates that, in the main, the captain was quite attentive to the plaintiff, and that all was done for him which, in good faith, was deemed expedient under the' circumstances. Indeed, there is the testimony of a fifth witness in the case, to the effect, that the plaintiff subsequently *157 declared that the captain had cared for him as if he had been his father.
The only thing which, therefore, remains to be considered, consists of the active treatment by the captain of plaintiff’s hand and wrist up to the time of the arrival of the vessel at Batavia. From all that bears upon this point, the conclusion is inevitable, that the captain was right to put on splints, but that he erred in putting them on too tight and keeping them on too long. Whether he took the splints from the medicine chest, or constructed them out of the boards of a maccaroni box, and whether they were as thick as claimed by the plaintiff, or as thin as claimed by the captain, are matters of no importance whatever. The idea uppermost in the captain’s mind seems to have been that his first duty was to bring about a bony reunion of the fractured parts of the wrist, and that in the meantime, the hand, though it was bruised, had to be left to take care of itself. He persisted in this idea even when he saw that mortification of the hand was setting in, for he then proceeded to cut out portions of the splints and to allay the inflammation by the application of poultices, but failed to ease the hand by a removal and change of the splints or the substitution of more elastic appliances. This certainly was an error, and without doubt the cause of the present stiffness in three fingers and the thumb of plaintiff’s hand which constitutes the injury for which damages are claimed. But a mere error of judgment, in such a case, although it may be a grave one, is not equivalent to negligence. To recover, the plaintiff must prove additional facts which make the error negligence. Moreover, negligence must be established by a preponderance of evidence. Upon all the evidence given on both sides, 'the inferences militating against the captain’s treatment are of such a character that the result of the treatment may well be attributed to mere want of medical skill which the master of a vessel is not presumed to possess.
The examination so far made sufficiently shows that, *158 even if the case was in. all respects properly submitted to the jury, the weight of the evidence was in favor of the defendant upon the question of negligence, and that the jury should have rendered a verdict for the defendant.
The judgment and order should be reversed, and a new trial ordered with costs to the appellant to abide the event.
Sedgwick, Oh. J., and Van Vorst, J., concurred.